# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ALFRED BOYAJIAN,       :
                             :

      Plaintiff,        :
                             :

v.                           :     CIVIL ACTION NO.
                             :     1:09-CV-3006-RWS

THE CITY OF ATLANTA,     :
      Defendant.       :
                             :
                             :
                             :

## ORDER

This case comes before the Court on Plaintiff Alfred Boyajian's Motion for Summary Judgment and a Permanent Injunction [52], Defendant the City of Atlanta's Motion for Summary Judgment [53], and the City's Motion for Reconsideration to Consider Response to Plaintiff's Motion for Summary Judgment and Permanent Injunction and Statement of Material Facts [67]. After a review of the record, the Court enters the following Order.

## I. Statement of Facts

The Plaintiff, Alfred Boyajian, has been raising and breeding wild cats[1] within the City of Atlanta's ("the City") residential zoning since 1977. Pl.'s SMF, Dkt. No. [52-2] at ¶¶ 2, 5. The Plaintiff does this as a "hobby" with an intent on wild-cat conservation– "his ["full-time"] occupation has been as the owner of a brass manufacturing company, Premier One Source." Id. at ¶¶ 6-7, 13.

With the exception of a bobcat held pursuant to a game-holding license, the State of Georgia requires that the Plaintiff obtain a wild animal license for all of his exotic cats. Def.'s SMF, Dkt. No. [53-2] at ¶ 8. While classified as "inherently non-dangerous wild animals" under Georgia law, these cats cannot be held as pets, and under state law, the Plaintiff is in the "wholesale wild animal business." Id. at ¶¶ 7, 9, 40. Plaintiff has no employees, expends his own resources and money to pay for the cats, and sells approximately two to three cats a year at cost. Pl.'s SMF, Dkt. No. [52-2] at ¶¶ 9-12. However, the Plaintiff

---

[1]These cats include Eurasian lynxes, caracals, servals, Canadian lynxes, and bobcats. Pl.'s SMF, Dkt. No. [52-2] at ¶ 6.

did incorporate his operation under the name Exotic Cats of Georgia, Inc. Def.'s SMF, Dkt. No. [53-2] at ¶¶ 4-7.

From 1980 until 1994, the Plaintiff lived at a single-family residence on Howell Mill Rd. within the City of Atlanta's R-2 residential zoning. Pl.'s SMF, Dkt. No. [52-2] at ¶ 15.  In 1994, the Plaintiff relocated 1.5 miles away to a single-family residence at 3720 Paces Valley Rd., Atlanta, GA 30327. Id. at ¶ 17.  This location is also within the City's R-2 residential zoning. Id. at ¶ 18. "As part of the stipulations for Plaintiff's purchase of the property and in order to house the cats at the [p]roperty in compliance with USDA AWA standards, the Plaintiff obtained zoning accessory use approval of his site plan and a building permit for eight-foot high perimeter and pen fences that was approved by the City in 1994." Id. at ¶ 19. Further, until sometime in 2006, it was the City's understanding that the Plaintiff would not have to hold a business license as his conduct was not "carrying on a business" under the ordinance. Ex. to Howard Dep., e-mail from Michael Pashos to Katie Howard, Sept. 1, 2006, Dkt. No. [60]; Dep. Howard, Dkt. No. [60] at 26:19-27:24.

Following numerous wild cat escapes from the Plaintiff's property, some of the Plaintiff's neighbors filed complaints with former City Council Member

3

Clair Muller. Def.'s SMF, Dkt. No. [53-2] at ¶ 41; Pl.'s SMF, Dkt. No. [52-2] at ¶ 25; Dep. Howard, Dkt. No. [60] at 30:18-25. These complaints prompted the City to investigate Plaintiff's permits. Dep. Howard, Dkt. No. [60] at 30:18-25.

Finding that the Plaintiff did not have a business license on file, the City cited Plaintiff under City of Atlanta Ordinance § 30-65 for operating a business without a business license and § 16-04.004 for commercial use of an accessory structure in R-2 zoning. Pl.'s SMF, Dkt. No. [52-2] at ¶ 26.  At the time of the citation, the licensing inspector did not have personal knowledge that the Plaintiff was actually selling any cats. Dep. Muhammad, Dkt. No. [59] at 12:1-3.  Further, the zoning inspector issued him the citation for housing and breeding the cats–not selling them. Dep. Evans, Dkt. No. [62] at 11:10.

Following the City's citations and change in position on the licensing requirement, the Plaintiff then applied for a business license on August 10, 2007. Def.'s SMF, Dkt. No. [53-2] at ¶ 25.  That application was denied because the City found his business was "not a permitted use in a residential district." Id. at ¶ 27.

The Plaintiff then filed this suit in federal court, bringing a void for vagueness challenge to the at-issue City of Atlanta ordinances.  Upon filing, the

4

Plaintiff moved for a preliminary injunction, and following a hearing on the matter, that motion was granted. Dkt. No. [22].

Both parties now bring motions for summary judgment on the Plaintiff's only claim, his 42 U.S.C. § 1983 due process claim.  The Defendant has additionally moved this Court to consider its opposition to the Plaintiff's motion for summary judgment because the response was not filed in a timely fashion.  The Court will consider each of the motions in turn.

## II. Discussion

### A. Defendant's Motion for Reconsideration

As a preliminary matter, the City has moved this Court to exercise its discretion under Local Rule 7.1(F) to consider its responses to Plaintiff's Motion for Summary Judgment and corresponding Statement of Material Facts ("SMF"). The deadline to file motions for summary judgment was August 30, 2010. Dkt. No. [48].  On that date, both the Plaintiff and the Defendant filed their respective motions for summary judgment. Dkt. Nos. [52, 53].  However, while Plaintiff filed his response to Defendant's motion, the Defendant did not respond to the Plaintiff's. See Dkt. Nos. [63, 64].

Following the submission of Plaintiff's motion to the Court on September 24, 2010–without Defendant's response–the Plaintiff then filed his reply, bringing the Court's attention to Defendant's responsive failure on October 4, 2010. Dkt. No. [66]. On October 5, 2010, twelve days after its response was due, the City submitted its response and a corresponding motion moving the Court to consider it. Dkt. Nos. [67-69].

Local Rule 7.1(F) states that when a brief fails to conform with the local rules, the "court, in its discretion, may decline to consider any motion or brief." LR 7.1(F), ND Ga. Further, Federal Rule of Civil Procedure 6(b)(1) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . on motion made after the time has expired if the party failed to act because of excusable neglect." FED. R. CIV. P. 6(b)(1). The question, then, is whether the Defendant failed to act because of "excusable neglect."

Defendant argues that it acted with "excusable neglect" because it did not realize the motion was pending. Namely, the Defendant argues that it received five electronic notices that day and the Defendant assumed that all of the emails pertained to the Defendant's own filings, not any of the Plaintiff.

However, mere negligence in failing to respond to a filing is not excusable neglect. Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc., 803 F.2d 1130, 1132 (11th Cir. 1986).  Defendant knew that the last day to file for summary judgment was August 30th–the date in question–so it was likely in a vigorously litigated case that the Plaintiff would also file that day.  Moreover, on September 17, 2010, the Plaintiff filed a Notice of Filing Original Discovery which referenced its own motion, during Defendant's response period. Dkt. No. [58].  As well, it is worth noting that the Defendant ignored the electronic filing notices sent to two different attorneys and did not file its motion until twelve days after counsel received notice that the Plaintiff's motion was submitted.

As such, the Court does not find Defendant acted with "excusable neglect" and will not consider its response. However, because the Defendant also filed a motion for summary judgment, the Court will, out of fairness, consider the arguments presented therein which respond to Plaintiff's Motion. But, Plaintiff's Statement of Material Facts is deemed unopposed. See LR 7.1(B), ND Ga. Therefore, the City's Motion for Reconsideration to Consider Response to Plaintiff's Motion for Summary Judgment and Permanent

Injunction and Statement of Material Facts [67] is **GRANTED, in part** and **DENIED, in part**.

B. Cross Motions for Summary Judgment

**1. Legal Standard**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"  Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257  (1986).

The applicable substantive law identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

9

Finally, the filing of cross-motions for summary judgment does not give rise to any presumption that no genuine issues of material fact exist.  Rather, "[c]ross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."  Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 538-39 (5th Cir. 2004).

### 2. Void for Vagueness Standard

Both parties have moved for summary judgment on Plaintiff's only count, a 42 U.S.C. § 1983 claim predicated on federal due process. Section 1983 provides a cause of action for persons who have been "deprive[d] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of law. 42 U.S.C. § 1983.

Plaintiff asks this Court to declare that two of the City's ordinances–the business license ordinance and the accessory structure ordinance–are unconstitutionally vague both facially and as applied. A facial challenge seeks to invalidate the ordinance itself. U.S. v. Frandsen. 212 F.3d 1231, 1235 (11th Cir. 2000). "The general rule in this circuit is that for a facial challenge to be successful, a plaintiff must establish that no set of circumstances exists under

which the law would be valid." Id. (citing Adler v. Duval Cnty. Sch. Bd., 206 F.3d 1070, 1083-84 (11th Cir. 2000)).

To pass constitutional muster under the Due Process Clause, a statute must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited ... [and] provide explicit standards for those who apply [it]" to avoid arbitrary and discriminatory enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972). "A statute is void for vagueness if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" Smith v. Goguen, 415 U.S. 566, 572 n.8 (quoting Connally v. General Constr. Co., 269 U.S. 385, 392 (1926)). A non-criminal statute[2] is equally exposed to a vagueness challenge because the failure is not in the penalty but rather

> the exaction of obedience to a rule or standard . . . so vague and indefinite as really to be no rule or standard at all.  Any other means of exaction, such as declaring the transaction unlawful or

---

[2]Plaintiff alleges in his brief that the municipal ordinances are criminal.  However, under Georgia law, municipal ordinance violations are not crimes unless expressly made so by a Georgia law. O.C.G.A. § 16-1-4 ("No conduct constitutes a crime unless it is described as a crime in this title or in another statute of this state."); see Clark v. Georgia, 277 S.E.2d 738, 739 (Ga. Ct. App. 1981) (finding that a violation of a county ordinance was  only a crime because it was specifically codified as one under the Official Code of Georgia). Plaintiff has not pointed to any Georgia statute which would make violating these ordinances a crime under Georgia law.

11

stripping a participant of his rights under it, [is] equally within the principle of [vagueness].

A.B. Small Co. v. Am. Sugar Refining Co., 267 U.S. 233, 239 (1925).[3]

### a. Business License Ordinance

"Without question the granting, denial, or revocation of business licenses involves rights subject to the protection of the due process clause." Houseworth v. Glisson, 485 F. Supp. 29, 37 (N.D. Ga. 1979) (citing Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964)).  City of Atlanta Ordinance Section 30-65 ("business license ordinance") generally requires that "[a]ll businesses operating within the jurisdiction of the city shall be registered with the business tax division *unless exempted* by this article or by state law." Ord., Dkt. No. [3] at 11 (emphasis

---

[3]Defendant spends much of its briefing arguing that the ordinances should be upheld under rational basis review or under the takings clause.  However, Plaintiff has not mounted a challenge to the underlying license denial or citations.  Rather, he is challenging the wording chosen by the City–wording that he believes is unconstitutionally vague.  In such an inquiry, the Court is not concerned with the City's motivations in enacting the ordinance, but rather whether the ordinance provides "fair notice" or, because it lacks standards, leads to "arbitrary or discriminatory enforcement."  See Houseworth v. Glisson, 485 F. Supp. 29, 39 (N.D. Ga. 1978) (noting that in a challenge to a business license ordinance, the Court did not discuss rational basis review or the takings clause).  In such a case, the Court will evaluate the vagueness challenge "in light of the facts of the case at hand." Konikiv v. Orange Cnty., Fla., 410 F.3d 1317, 1330 (11th Cir. 2005).  Considering the underlying scenario does not convert his challenge from one of void for vagueness to one of classic due process.

added). Plaintiff does not challenge that he qualifies as a "business"[4] under this Section, as he has operated a "wild animal business" under Georgia law since 1983.  Pl.'s Opp. Br., Dkt. No. [64] at 7 (citing Ver. Cmpl., Dkt. No. [1] at ¶ 3). However, Plaintiff alleges that this provision is unconstitutionally vague when read in conjunction with City of Atlanta Ordinance Section 30-72 ("casual or isolated exception").  This exemption provides:

> Nothing contained in this articles shall be interpreted as to require any person who may engage in casual or isolated activity and commercial transactions involving personal assets and not the principal occupation of the individual to obtain a business tax registration and pay a tax therefor.

Ord., Dkt. No. [3] at 13 (emphasis added).  Plaintiff has challenged the underlined phrases above as unconstitutionally vague.

The Court does not find "commercial transactions" or "principal occupation" to be unconstitutionally vague, whether facially or as applied. Based on context and the plain and ordinary meaning of "commercial transactions," it is clear this term would apply to any person who engages in the buying or selling of personal assets. See THE AMERICAN HERITAGE COLLEGE

---

[4]The Ordinance specifically states that "[b]usiness shall maintain its ordinary and customary usage according to context but also may be used to generally identify a person or entity carrying on a trade, occupation, profession, or other commercial or non-commercial enterprise." Ord., Dkt. No. [3] at 5.

13

DICTIONARY 280 (3d Ed. 2000) (defining "commercial" as "engaged in commerce" and "commerce" as "the buying and selling of goods").  This phrase is easily applicable to the Plaintiff, as he is involved in the sale of his personal assets–the wildcats.  Pl.'s SMF, Dkt. No. [52-2] at ¶ 11. Further, he advertises these exotic cats for sale in a trade publication. Def.'s SMF, Dkt. No. [53-2] at ¶ 39. And, Plaintiff admitted *en judicio* before the Atlanta Municipal Court that he was involved in a "commercial activity" under the business license ordinance.  Ex. 1, Def.'s SMF, Dkt. No. [53-1] at 27:17-24.  Further, Plaintiff cannot prove that there are "no set of circumstances" where the phrase would be constitutional as it is constitutional in his own case.  Therefore, this phrase is constitutional both facially and as applied.

Further, "principal occupation" in its plain and ordinary meaning denotes the "chief or leading" occupation of the party. THE AMERICAN HERITAGE COLLEGE DICTIONARY 1088 (3d Ed. 2000).  Here, Plaintiff states that his "occupation" is as the owner of a brass manufacturing company, Premier One Source.  Pl.'s SMF, Dkt. No. [52-2] at ¶ 13.  He further describes his cats as a "hobby." Id. at ¶ 6. There is no ambiguity in this case, nor is there evidence

14

that all factual circumstances would be unconstitutional.  Therefore, the Court also finds this phrase to be constitutionally sufficient.

However, the Court does agree that the phrase "casual or isolated activity" is unconstitutionally vague as applied.   For 32 years, the City never required the Plaintiff to obtain a business license. Pl.'s SMF, Dkt. No. [27] at ¶¶ 27; Dep. Howard, Dkt. No. [60] at 26:19-31:19  (noting that a city official was initially told by either the "business licencing or the solicitor's office" that the Plaintiff was not required to possess a business license due to the exception). However, following the City's change in position, the Plaintiff was first cited for violating the ordinance in December 2007. Citation, Dkt. No. [11] at 33.

This phrase creates classic vagueness problems.  First, a person of ordinary intelligence would not know what "casual or isolated" means in this context.  Katie Howard, the Senior Aide to former Council Member Clair Muller–the council member who initiated the Plaintiff's investigation, testified that she did not have clear understanding about what the phrase meant, and could encompass a business that was "not constant," "once a month," "twice a year," or "every so often." Pl.'s SMF, Dkt. No. [52-2] at 11-12. Further, this phrase is not defined within the business license ordinance, whether by way of

15

example or definition, and does not provide the fair notice the Constitution requires.

Also, this phrase leads to arbitrary and discriminatory enforcement.  The city official who issued the Plaintiff's citation, Sabir Muhammad, stated that he was directed to issue the citation at the City Council's direction. Dep. Muhammad, Dkt. No. [59] at 16:8-13. He had no personal knowledge that any cats were sold; there were no gift shops, business signs, or sales which would have indicated a business.  Id. at 12:1-3; 15:1-9.  He relied on the City Council's assertion that there was a business.  Id. at 16:8-13.  Then, to a hypothetical question of whether he would consider "five dogs on a piece of property a business," Mr. Muhammad state he "might.  It depends on the circumstances."  However, he was unable to articulate what those circumstances might be–without even listing one relevant factor. Id. at 15:14-16:4.

Without having some threshold or even list of factors which would be considered in a "casual or isolated" determination, the potential for arbitrary enforcement is great. Under this scheme, the city officials have "unbridled discretion" to determine what exceeds the "causal or isolated" threshold, without any objective criteria.  This is seen through the City's ability to

16

unilaterally change its interpretation after thirty-two years. <u>See</u> Dep. Howard, Dkt. No. [60] at 26:19-31:19 (outlining that the City had originally indicated that the Plaintiff met the exception, but later, after complaints were made about the cats, a City Council Member directed the City to make sure that "proper permits were had"). The phrase "casual or isolated" is unconstitutionally vague as applied.

While the Court finds merit in Plaintiff's as-applied challenge, the facial challenge does not face the same fate. Under the Eleventh Circuit's high standard–that the Plaintiff prove the ordinance is constitutional under "no set of circumstances"–Plaintiff cannot prevail. One yard sale, or the sale of one used car, would clearly be "casual or isolated" under any understanding of the phrase. While admittedly the standard becomes murky when any resident completes more than one commercial transaction, because there is "a set of facts" which would clearly be constitutional, the facial challenge must fail.

<u>b. Accessory Use Ordinance</u>

Plaintiff has additionally challenged City of Atlanta Ordinance § 16-04.004 ("accessory use ordinance") on void for vagueness grounds. That ordinance states:

Uses and structures which are customarily incidental and subordinate to permitted principal uses and structures are permitted.  These include but are not limited to the following, subject to limitations and requirements set forth herein or elsewhere in this part:

    (1)Greenhouses, garden sheds, private garages, and similar structures

    (2)Barns for keeping of horses, provided that no such barn shall be within 50 feet of any lot line

    (3) Guest houses, servant quarters, or lodging facilities for caretakers or watchmen

    (4) Swimming pools, tennis courts and similar facilities

    (5) Home occupation, subject to limitations set forth in section 16-29.001(17)

    (6) Structures necessary for active construction projects

    (7) Devices for the generation of energy, such as solar panels, wind generators, and similar devices

    (8) Amateur radio service antenna structures 70 feet or less in height . . .

Except in the case of home occupation, no accessory shall be of a <u>commercial nature</u>. . . .

Ord., Dkt. No. [3] at 15 (emphasis added). Plaintiff argues that the phrase "of a commercial nature" is unconstitutionally vague on its face and as applied.

On its face, the Court does not find the phrase to be unconstitutional. Clearly, operating an auto repair facility or restaurant out of a person's garage in a residential area would be of a "commercial nature" under the code.  This would be a continued operation, with weekly if not daily sales, and would clearly relate to "commerce"–the buying and selling of goods.

AO 72A
(Rev.8/82)

However, the as-applied case is not as clear.  Anne Heard, the City of Atlanta Chief of Zoning, stated that having an occasional commercial use does not make the resident in violation of the Ordinance so long as the use is "customary and incidental."  Dep. Heard, Dkt. No. [61] at 35:16-36:4.   For instance, she stated that having a garage sale once or twice a year would not bring the resident in violation of the ordinance. Id. at 36:5-8.  When pressed on what "circumstances" the City would consider if the person held more than two garage sales, Ms. Heard stated that she "was not sure" but that the City would "have to investigate, you know, each one on a case-by-case basis." Id. at 36:11-15.  Further, she stated that she generally interprets what the ordinance means, and "if necessary, consult[s] with [the] department head or legal." Id. at 36:20-22.

This phrase vests too much discretion in the City.  There are no objective standards, or even examples on a continuum, which an ordinary resident can review and know whether his conduct would be prohibited.

Further, as to the Plaintiff's situation, Jesse Evans–the city official who gave the Plaintiff his accessory use citation–stated that he issued the citation because the Plaintiff was "[h]ousing those cats and breeding them." Dep. Evans,

AO 72A
(Rev.8/82)

Dkt. No. [62] at 11:8-10.  However, Ms. Heard stated that "[i]f you are raising

and breeding animals for your personal use, that would be, you know, if your

cats mate and have kittens, that's incidental." Id. at 48:1-4.  She went on to state

that the sale of five kittens out of a litter would be "incidental and customary

and accessory." Id. at 48:18-22.  Here, the Plaintiff's cats only produce, and the

Plaintiff subsequently sells, only two to three cats a year. Pl.'s SMF, Dkt. No.

[52-2] at ¶¶ 10-11.  If the City is able to hold this opinion as to one set of cats,

and not to the Plaintiff's–without an intermittent change in the ordinance

language–it is clear arbitrary enforcement can and has occurred through the

interpretation of "commercial nature."  See Konikov v. Orange Cnty., 410 F.3d

1317, 1330-31 (11th Cir. 2005) (holding that the enforcement of differing

officer's opinions regarding what rises to the level of a violation supports

vagueness finding). Plaintiff's as-applied challenge stands.

Based on the foregoing, Plaintiff's Motion for Summary Judgment is

**GRANTED,** and Defendant's Motion for Summary Judgement is

correspondingly **DENIED** on the as-applied challenges to the "casual or

isolated activity" provision of the business license ordinance and "commercial

nature" provision of the accessory use ordinance.  Further, Defendant's Motion

for Summary Judgment is **GRANTED,** and Plaintiff's Motion for Summary

Judgment is correspondingly **DENIED** on all remaining facial and as-applied

challenges to the ordinances.

>   C. Motion for Permanent Injunction

Under the principles of equity, a plaintiff requesting a permanent

injunction must satisfy a four-factor test:

> (1) that [the plaintiff] has suffered an irreparable injury; (2) that
> remedies available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that, considering the
> balance of hardships between the plaintiff and defendant, a remedy
> in equity is warranted; and (4) that the public interest would not be
> disserved by a permanent injunction.

eBay, Inc. v. MercExchange, L.L.C. , 547 U.S. 388, 391 (2006). Thus, the

standard for a permanent injunction is essentially the same as for a preliminary

injunction except that the movant must show actual success on the merits

instead of a likelihood of success on the merits. Siegel v. Lepore, 234 F.3d

1163, 1213 (11th Cir. 2000). Plaintiff had already succeeded in gaining a

preliminary injunction. See Order, Dkt. No. [22].  As determined above, the

Plaintiff has also shown actual success on the merits of his as-applied

challenges to the business-license and accessory-use ordinances.

Accordingly, the City of Atlanta, and its respective officers, agents, employees, successors, and assigns are hereby **PERMANENTLY ENJOINED**[5] from taking any adverse action against the Plaintiff based upon the provisions that the Court has declared herein to be void for vagueness.

### III. Conclusion

Based upon the foregoing, the City's Motion for Reconsideration to Consider Response to Plaintiff's Motion for Summary Judgment and Permanent Injunction [67] is **GRANTED, in part** and **DENIED, in part**. As well, Plaintiff's Motion for Summary Judgment [52] is **GRANTED, in part DENIED, in part** and Defendant's Motion for Summary Judgment [53] is **GRANTED, in part** and **DENIED, in part**.  As a result, Plaintiff's Claim for a Permanent Injunction is **GRANTED**.

Based on the Complaint and the Preliminary Report, the only remaining issues in the case are attorneys' fees and costs.  <u>See</u> Cmpl., Dkt. No. [1] at 11;

---

[5]Defendant states in its brief that "[i]f Boyajian is now asking the Court to invalidate the City's ordinances in this civil action in order to prevent the completing of the prosecution of a criminal matter pending in the Georgia courts, this is a new position which the Court must consider from the point of view of <u>Younger v. Harris</u>, 401 U.S. 37 (1973)." Def.'s Reply, Dkt. No. [5] at 5.  The Court does not read Plaintiff's complaint or briefing to request such retroactive relief.  But, to be clear, and to avoid running afoul of <u>Younger</u>, this Court is only providing an injunction prospectively.  This in no way affects the Plaintiff's previous citations.

Prelim. Rep., Dkt. No. [23] at 1.  Plaintiff is **ORDERED** to file his schedule of costs and fees within 14 days of this Order.  Defendant will then have 7 days to file any objections, and if so filed, Plaintiff will have 7 days following the Defendant's objections to reply.

      **SO ORDERED** this _ 31st _ day of March, 2011.

                                    **RICHARD W. STORY**
                                    United States District Judge

AO 72A
(Rev.8/82)